2002 OK CIV APP 74

**John ALLEN, Petitioner,**

**v.**

**LENAPE LURE COMPANY, First Nations Compensation Plan and The Workers' Compensation Court, Respondents.**

**No. 97,084.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 26, 2002.

Certiorari Denied July 2, 2002.

Walt Brune, Fred L. Boettcher, Ponca City, OK, For Petitioner.

Mark K. Blongewicz, Robert P. Fitz–Patrick, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, For Respondents.

Opinion by CAROL M. HANSEN, Presiding Judge:

¶ 1 In seeking review of the Workers' Compensation Court's order denying his claim, Petitioner, John Allen (Claimant), contends the court misinterpreted 85 O.S.1991 §§ 65.2 and 65.3, which together are referred to as the "estoppel act." Section 65.2 provides:

Every employer and every insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a Workmen's Compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the Workmen's Compensation law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer in a hazardous employment subject to and covered by the Workmen's compensation law if such person receives an accidental personal injury arising out of and in the course of his employment, during the period for which such premium was so received, regardless of the type of business in which the employer was engaged or the type of employment in which the employee was engaged at the time of such injury.

¶2 Where, as here, the issues presented turn on interpretation of statutes, such issues are questions of law, and we will examine the Workers' Compensation Court's ruling independently with no deference given to that ruling. *Fink v. State ex rel. Department of Public Safety*, 1992 OK CIV APP 169, 852 P.2d 774.

¶3 The facts here are essentially undisputed. Claimant was an employee of the Lenape Lure Company, one of the names under which the Delaware Tribe of Oklahoma (the Tribe) does business. On January 11, 2001, while employed by the Tribe and on its premises, Claimant slipped on some ice and was injured. From the date of injury to February 22, 2001, the Tribe, paid Claimant "wages in excess of $1,500.00", although he was off work with the injury at the time. From the latter date, the Tribe's insurance carrier, First Nations Compensation Plan (First Nations), paid Claimant four "addition-

al" weeks temporary total disability compensation totaling $672.00.

¶4 In response to Claimant's Form 3, the Tribe filed its answer admitting Claimant was its employee, but denying injury and coverage under the Workers' Compensation Act. The Tribe asserted non-compensability due to "neutral risk", and lack of jurisdiction, alleging tribal sovereign immunity. After filing its answer, the Tribe moved to dismiss, both as to itself and First Nations.

¶5 After presentation of evidence, the trial court entered its order finding Claimant's injury, which occurred while he was returning from the restroom on a direct route back to his duty station, arose out of and in the course of his employment. The trial court found at the time of injury the Tribe had in force a workers' compensation insurance policy from First Nations[1]. The trial court further found while the Tribe is a sovereign Indian nation immune from Oklahoma workers' compensation liability, First Nations was estopped in accordance with 85 O.S.1991 §§ 65.2 and 65.3 from denying liability. The trial court dismissed the Tribe, but ordered First Nations to pay compensation to Claimant.

¶6 First Nations filed an appeal to a three-judge panel of the Workers' Compensation Court. The three-judge panel, with one judge dissenting, vacated the order of the trial court. Citing *Dominic v. Creek Nation*, 1997 OK 41, 936 P.2d 935,[2] the panel found Claimant had failed to satisfy his burden of establishing First Nations' insurance premiums were calculated in part upon Claimant's salary. Claimant seeks review of the order of the three-judge panel.[3]

¶7 In *Dominic*, the State Insurance Fund carried the tribe's workers'·compensation insurance, basing its premiums on the salaries of the tribe's employees. The Oklahoma Supreme Court reversed the trial court and the three-judge panel and vacated the Court of

1. The customers of First Nations are exclusively limited to Indian Tribes recognized by the federal government.

2. See also, the progeny of *Dominic—Little v. Muscogee (Creek) Nation*, 1997 OK 57, 938 P.2d 739; *Wahpepah v. Kickapoo Tribe of Oklahoma*, 1997 OK 63, 939 P.2d 1151; *Muscogee (Creek)*

*Nation v. Smith*, 1997 OK 66, 940 P.2d 498. In each case the carrier was the State Insurance Fund.

3. Claimant limits his appeal to the jurisdictional issue of liability of First Nations. He does not appeal the finding the Tribe is immune from suit.

Civil Appeal's opinion, all of which had found the claimant was not covered because the tribe was not an "employer" under the Workers' Compensation Act.

¶ 8 The *Dominic* Court held the State Insurance Fund was "statutorily estopped" to deny the tribe's "cover-employed status" pursuant to §§ 65.2 and 65.3. The Court stated the purpose of statutory estoppel is to prevent both an employer's and an employee's ensnarement in the false belief that compensation had been provided, only later to discover the protection to be unavailable.

¶ 9 Noting the tribe's claim of sovereign immunity was not at issue, Justice Opala, writing for the Court, focused on the rights of the injured claimant against the tribe's insurer. These rights, he stated, were statutory rather than contractual. The decision held that the claimant who relies upon estoppel must show (1) an injury that occurred during the time his employer maintained a compensation liability policy, (2) the insured employer's payment of premiums based the claimant's salary, and (3) the claimant's injury occurred in and arose out of her employment with the insured employer. "This proof brings the insurer under the estoppel act's compensation liability."

¶ 10 First Nations claims the second element above is missing in Claimant's case. In fact, in its brief, it acknowledges it "specifically modified the method by which it calculated premiums and charged its customers" to avoid coverage under *Dominic*. "Rather than calculate those premiums based on the wages of salaries of particular tribal employees, First Nations instead calculated premiums based on the number of employees and their various job classifications."

¶ 11 The effect of First Nations formulation, whether intended or not, allows it to use its insured's immunity to deny Workers' Compensation coverage to any or all of the Tribe's employees, notwithstanding that it admittedly had collected premiums based on each of those employees. We find this result contrary to the letter and spirit of the estoppel act. We do not believe either the Legislature or the Supreme Court designed or interpreted the statutes to provide an "out" for a tribe's insurance carrier.

¶ 12 We agree with the trial court that *Dominic* and related cases are good law, but the formalistic distinction drawn by First Nations is irrelevant. As the trial court noted, "[t]he fundamental basis for estoppel is that the premium paid for coverage is based upon the fact of claimant's employment and the activities performed." The result would be different if First Nations, as did the State Insurance Fund in *Dominic,* computed its premiums based on salaries of its employees, and Claimant's salary was not included.

¶ 13 If a carrier does set its premiums for a tribe, or any other employer, according to wages of its employees, then certainly the criteria set out in *Dominic* would apply. Whereas here, when the carrier bases its premiums on the number of employees and the types of job duties in which those employees, including Claimant, are engaged, the statutory provisions for estoppel will nevertheless apply. This clearly falls within the intent and unambiguous language of the estoppel act.

¶ 14 The estoppel act prohibits an employer or insurance carrier from contesting covered employment of an employee where the employee is scheduled for the purposes of paying or collecting premiums, or where premiums are paid, received or collected "by reason of or upon the basis of the employment of any such employee." There is no statutory mandate that those premiums must be based on wages or salary. That is an element which has been judicially added under facts peculiar to the case on review. While the *Dominic* Court, and other decisions, makes collection of premiums based on wages or salaries a requisite element, that is because premiums were so calculated by the carriers in those cases.

¶ 15 There are, however, Supreme Court decisions where the estoppel act was found to apply without reference to the method of calculating premiums. *See, e.g. Atlas Rock Bit Service Co. v. Henshaw,* 1979 OK 20, 591 P.2d 294 (What triggers application of the estoppel act is the employer's act or paying and the insurer's act of receiving premiums, citing *Miller v. Sears, Roebuck & Co.,* 1976

OK 67, 550 P.2d 1330); *Jot Davis Welding Service v. Davis,* 1962 OK 243, 376 P.2d 259 (If the employer is obligated to pay, and the insurer is authorized to collect, the premiums on the employee, the employee is covered by the Workman's Compensation Act); *Fuller White Chevrolet Co. v. Graham,* 1960 OK 179, 355 P.2d 557 (Stated intention of both employer and insurer was to insure all employees of employer).

¶ 16 In determining applicability of the estoppel act, we need also examine the second component section, § 65.3, which provides:

> Every contract of insurance issued by an insurance carrier for the purpose of insuring an employer against liability under the Workers' Compensation Act shall be conclusively presumed to be a contract for the benefit of each and every person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determination of the amount of premium collected upon such policy for the payment of benefits as provided by the Workers' compensation Act regardless of the type of business in which the employer of such person is engaged or the type of work being performed by the employee at the time of any injury received by such employee arising out of and in the course of his employment, which contract may be enforced by such employee as the beneficiary thereof.

■ ¶ 17 In one of the earliest cases considering the estoppel act, and in which §§ 65.2 and 65.3 were found to be constitutionally proper, the Supreme Court held with respect to § 65.3:

> The effect is that when a contract of insurance, as mentioned, has been issued for the purpose of insuring an employer against liability under the Workmen's Compensation Law, and *when a persons employment is considered or used in determination of the amount of premiums collected upon such policy* for the payment of benefits as provided by the Workmen's Compensation Law, such person on sustaining injury in the employment may proceed under the Workmen's Compensation Law for compensation. (Emphasis added).

*National Bank of Tulsa v. Goldsmith,* 1951 OK 5, 226 P.2d 916.

As one of the employees whose employment First Nations concedes was considered in determining the amount of premium, Claimant has an enforceable right to seek compensation against First Nations under the contract with the Tribe.

¶ 18 It has long been a rule in this jurisdiction that the Workers' Compensation Act is to be liberally construed in favor of the workers it is intended to benefit. *Phillips v. Duke Mfg., Inc.,* 1999 OK 25, 980 P.2d 137. The Oklahoma Supreme Court spoke to the purpose of the estoppel act in *Jot Davis Welding Service v. Davis,* 376 P.2d at 260:

> If it were not for these statutory provisions both the employer and employee might go along, seeing premiums on the policy collected and being lulled into believing that the latter's job was covered by the policy, then, when an accident occurred and a claim was filed thereunder, suddenly find to their joint dismay, that they had no such protection.

¶ 19 First Nations' contended interpretation of the estoppel act would allow it to avoid liability for Workers' Compensation benefits which were bargained for and which the Tribe's employees believed would be available if they sustained employment related disabilities. We find that interpretation, the one adopted by the three judge panel, to be erroneous as a matter of law.

¶ 20 In addition, as in *Dominic,* there is another basis for our determination. In *Dominic,* as here, the compensation carrier paid temporary total disability benefits before it began to question the Workers' Compensation Court's jurisdiction. Here, First Nations, by its own admission, paid Claimant temporary total disability benefits from February 23, 2001 to March 22, 2001. The record reflects First Nations first contested the court's jurisdiction in its Answer filed March 26, 2001. The *Dominic* Court held that payment of benefits "*sans* contest of the employment-related nature of the claimant's harm constitutes a waiver of its defenses against liability."

¶21 Accordingly, we hold Claimant was covered by First Nations' policy at the time he was injured, and First Nations is estopped from asserting the Tribe's sovereign immunity in defense of his claim. The order of the three-judge panel is vacated and the cause is remanded to the three-judge panel for a hearing on the other issues submitted by First Nation in its appeal to the panel.

¶22 VACATED AND REMANDED.

ADAMS, J., concurs; MITCHELL, J., concurs by stare decisis.